The STATE of Ohio, Appellee,

v.

TOLBERT, Appellant.

[Cite as *State v. Tolbert* (1996), 116 Ohio App.3d 86.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69158.

Decided May 28, 1996.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *George J. Sadd,* Assistant Prosecuting Attorney, for appellee.

*James R. Willis,* for appellant.

---

KARPINSKI, Judge.

Defendant, Zahrod Tolbert, appeals from the judgment of the trial court finding him guilty of drug possession, drug trafficking, and possession of criminal tools. On appeal, defendant argues that his motion to suppress should have been granted and that the evidence was insufficient to support his conviction for possession of criminal tools. The relevant facts follow.

On January 10,. 1994, the trial court issued a capias for the arrest of the defendant because of probation violation. Later, on October 28, 1994, the Cleveland Police Department R.O.P.E. Unit (Repeat Offender Program Enforcement), receiving a tip, went to his girlfriend's apartment and arrested the defendant. In the process, the police also recovered a bag containing ninety-four rocks of crack cocaine from the couch where defendant was sleeping.

The first witness at the motion to suppress was Detective Marvin Cross. He stated that one of the major functions of the R.O.P.E. Unit is to pursue persons wanted on any outstanding capias. On October 28, 1994, Cross received a "Crime Stoppers" tip that defendant could be found at his girlfriend's apartment, located at 1015 Linn Ave., Apt. 5. Afterwards, Cross ran the defendant's name in the computer and found that various traffic warrants from the city of Cleveland and Cuyahoga County had been issued for his arrest. Having verified that the warrants were active, Cross obtained a photo, physical description, and criminal history of defendant from the file. Another tip from Crime Stoppers stated that the name of defendant's girlfriend was India. Arriving at the location on Linn Dr., the detectives learned that India lived in apartment 6 instead of apartment 5. When Cross knocked at the door of 6, India answered. Cross said that he identified himself as "Marvin the policeman." The officer then stated as follows:

"The door was open and I could see him laying [sic] on the couch. She was like, 'Do you have a warrant?' We just went straight on in. She started trying to walk back toward the couch where he was laying [sic] like to warn him. She was doing this like trying to block us. We just went on to the couch where he was.

" * * *

"After we got to the couch, Detective Kime and Detective Grooms had their guns out and was [sic] pointing at him. I went and leaned on him because the way he was laying [sic], he had a blanket over him and he had one arm was like out so the Detective Kime grabbed the one arm. We identified ourselves as police. He was half asleep. I leaned on him on the couch so that if he had a gun, we didn't know what he had, he couldn't pull it up, and then I told him hey, to stand still, and I'll take his arm out from under the blanket, and with Kime holding the one arm, I pulled his one arm out from under the cover slowly and then I pulled the cover back. When I pulled the cover back, there was a big bag with a bunch of rocks in it."

The police then found 11.44 grams of marijuana, two pagers, and $460 in cash on defendant. The rocks were later determined to be ninety-four rocks of crack cocaine. On cross-examination, Cross repeated that he could see defendant from the doorway and that India Perry did not consent to their entry.

The defense called Deborah Outlaw to the stand. She stated that she lived at 1015 Linn Drive, Apt. 5 and that India Perry lived at 1015 Linn Drive, Apt. 6.

India Perry also took the stand at the suppression hearing. She admitted that her door was already slightly open when Detective Cross knocked and asked her whether the defendant was in the apartment. She said that she just looked at the officer and did not invite him in. Perry then stated that the police found

rocks of crack cocaine under the pillows, which, along with covers, the police had pulled off the couch.

Thereafter, the trial court denied the motion to suppress. After a jury trial, defendant was found guilty on all three counts. He was sentenced as follows: eighteen months for the probation violation consecutive to four to fifteen years in count one, consecutive to one year in count two, and consecutive to six months in count three. Defendant was also fined $2,500 on count three.

Defendant timely appealed, raising two assignments of error. The first assignment states as follows:

"The court erred when it denied the defendant's motion to suppress."

In this assignment, defendant argues that his motion to suppress should have been granted because the entry into the apartment and subsequent arrest of defendant violated his rights under the Fourth Amendment. Defendant contends that (1) to enter his girlfriend's apartment the police were required to have a search warrant, and (2) absent a search warrant, the police conducted an illegal search when they recovered a bag containing the rocks of crack cocaine. These arguments are meritless.

Generally, the Fourth Amendment prohibits the police from making a warrantless nonconsensual entry into a suspect's home in order to make a felony arrest. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The *Payton* court held that an arrest warrant is required before entering the defendant's home to make an arrest. The court stated as follows: "Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661.

The police's entry into the apartment to arrest the defendant did not violate the defendant's Fourth Amendment rights. Defendant's reliance on *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38, is misplaced. In *Steagald,* the police entered the defendant's home to arrest a different person named in an arrest warrant. The *Steagald* court held that a search warrant is required to search a home of a person not named in the arrest warrant. Ohio law has followed *Steagald* under similar fact situations. *State v. Wilson* (1981), 2 Ohio App.3d 151, 2 OBR 166, 440 N.E.2d 1373. However, in both *Steagald* and *Wilson,* the defendant asserting the home privacy right was the homeowner, *not* the person named in the arrest warrant. The question left unanswered by these two cases is whether to suppress evidence found without a search warrant when an officer enters a dwelling in order to arrest a person named in the arrest warrant who is not the homeowner.

This issue was squarely addressed by the federal Ninth Circuit *en banc* and answered in the negative. *United States v. Underwood* (C.A.9, 1983), 717 F.2d 482. The court held that the right to privacy is personal to the homeowner and that the Fourth Amendment merely requires an arrest warrant plus "reason to believe" that the defendant was in another's house. As the *Underwood* court stated:

"A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's Fourth Amendment privacy rights in his own home [Payton], they necessarily suffice to protect his privacy rights in the home of another." 717 F.2d at 484.

■ In the case at bar, defendant concedes that the police did have a valid arrest warrant. The police also had reason to believe that the defendant was in the apartment. The police had a tip that defendant was at the apartment on Linn Drive with his girlfriend, India. When the police arrived at the apartment the woman who answered the door identified herself as India. This alone is "reason to believe" that the defendant was in the apartment.

■ The second issue under this assignment is whether the rocks of crack were obtained in violation of the Fourth Amendment. Detective Cross stated that the rocks were found next to the defendant as the police pulled off the blanket covering him. India Perry testified that the police found the crack cocaine when they pulled the pillows and covers from her couch. In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982. The trial court found the officer's testimony more credible and determined that the cocaine was found within reach of defendant. We are bound to the trial court's findings if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Even if the court accepted Perry's version that the rocks of crack were found behind a pillow, the drugs were still within defendant's reach, and thus were found during a valid search. Generally, a lawful custodial arrest justifies the contemporaneous warrantless search of the area within the arrestee's immediate control. *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. See, also, *United States v. Weaklem* (C.A.9, 1975), 517 F.2d 70. Accordingly, because the cocaine was found next to the defendant as he was secured by the officers, the cocaine was secured incident to a lawful arrest. This assignment of error is overruled.

Defendant's second assignment of error states as follows:

"The court erred when it denied the defendant's motion for judgment of acquittal based on the lack of proof that the items denominated in the indictment as being 'criminal tools,' were (as the statute required) possessed 'under circumstances indicating [they were] intended for criminal use.' "

In this assignment, defendant challenges the sufficiency of the evidence to sustain his conviction of possession of criminal tools (money and pagers) in violation of R.C. 2923.24. This statute states as follows:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use.

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

In reviewing a Crim.R. 29(A) motion for acquittal, the trial court must view the probative evidence and inferences reasonably drawn therefrom in a light most favorable to the prosecution. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. If the court finds the evidence is such that "reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt, the issue is presented to the jury." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, 402, 381 N.E.2d 184, 185. When reasonable minds could not convict, a Crim.R. 29(A) motion must be granted, the charges should be dismissed, and the case should not be given to the jury. *Id.*

This court, however, finds sufficient evidence to support a conviction for criminal tools based on money found in the possession of the defendant. *State v. Wilson* (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, unreported, 1994 WL 258662 (the police found money on the defendant after a controlled drug purchase from the defendant); *State v. Reese* (Aug. 18, 1988), Cuyahoga App. No. 54105, unreported, 1988 WL 88338 (the police found a large sum of money on the defendant after a drug sale); and *State v. Furst* (Nov. 15, 1990), Cuyahoga App. No. 59757, unreported 1990 WL 178165 (large sums of cash were found folded

and rubber-banded in the defendant's home along with other drug paraphernalia).[1] In addition to large sums of money, a pager has also been considered a criminal tool. *State v. McShan* (1991), 77 Ohio App.3d 781, 603 N.E.2d 1076.

In the case at bar, the state presented evidence that $460 and two pagers, along with the crack cocaine, were found in the possession of the defendant. The arresting officer testified that pagers are commonly used in the drug trade. He also testified that the money was in denominations consistently used in the drug trade. The state further argues that the defendant gave no credible explanation for the money or pagers. While this evidence may be minimal, the aforementioned cases from this court show that money and pagers found, along with drugs, are sufficient evidence to support a criminal tools conviction.

*Judgment affirmed.*

SPELLACY, C.J., and PATRICIA ANN BLACKMON, J., concur.

---

1.  However, in *State v. Novak* (Jan. 28, 1993), Cuyahoga App. No. 61799, unreported, 1993 WL 19557, this court reversed a conviction of criminal tools for possession of money the amount of which was uncertain and could have been quite small. In *Novak*, this court stated as follows: "The only evidence regarding the so-called criminal tools is that appellant was arrested with the sum of either $5 or $50 on his person. This alone is not enough to sustain his conviction for possession of criminal tools."