JOURNAL ENTRY AND OPINION
Appellant, Frank R. Kups, appeals from a jury verdict finding him guilty for violating R.C. 4511.19(A)(1) and R.C.4511.19(A)(3). He contends that Shaker Heights Municipal Court Judge K. J. Montgomery improperly denied his motion to suppress all evidence derived as a result of the unlawful stop of his vehicle, including the results of his field sobriety tests, his statements made to the police, and the numerical result of the Intoxilyzer test taken at the Chagrin Falls Police Station. He also claims that appellee, Village of Hunting Valley, failed to sustain its burden of going forward with evidence which would show that the Intoxilyzer was in working order at the time of his test and failed to provide expert testimony to support the BAC test results. We agree, reverse and remand.
On November 17, 1997, the judge held a hearing on Kups' motion to suppress evidence. Officer Daniel E. Reagan, a 14-year veteran of the Hunting Valley Police Department, testified that he was on duty at 1:00 a.m. on September 27, 1997, operating his patrol car westbound on South Woodland between Roundwood and SOM Center Roads. South Woodland is a two-lane roadway with a 50 mph speed limit. He claimed that he glanced at his rearview mirror and noticed, between 1300 and 2600 feet behind him, the presence of two cars also westbound on South Woodland but east of Roundwood. He believed the second car was traveling too close to the first and was preparing to pass it. Reagan decided to investigate, slowed, turned around in a driveway and waited for the cars to pass but neither did. He did not provide any information describing either of these vehicles.
He then proceeded eastbound on South Woodland, passed one westbound car and surmised that the vehicle in question had turned north (right) onto Roundwood and he would be able to see its tail lights northbound. Upon reaching Roundwood, Reagan noticed the Kups vehicle, a white 1995 Ford station wagon, with its engine running, stopped, westbound on the tree lawn adjacent to a six-inch curb on the north side of South Woodland. Its lights were off, the passenger door was open and a person was standing outside the vehicle on the passenger side. Reagan admitted he did not know whether the Kups' auto was one he had viewed out of his mirror and stopped only because he noticed a vehicle stopped off the roadway. He rolled down his window, activated his alley light onto the Kups' auto and asked whether "everybody is all right" and whether Kups, the driver, needed his assistance. Reagan stated that Kups explained his girlfriend was ill and had thrown up. While speaking, Reagan noted that Kups' eyes were "very red, and glassy, very shiney."
Kups then activated his headlights and Reagan, believing Kups was going to drive away, asked him to wait. Reagan then drove his car behind the station wagon, got out, approached the car and, while standing by the driver's window, asked Kups for his license and detected the odor of alcohol. Reagan returned to his car, called to check on both the license and registration, and requested back up.
After Sergeant Hendricks of the Hunting Valley Police arrived, they both returned to the station wagon, asked Kups to exit, and Reagan requested him to perform three field sobriety tests to which Kups submitted. Based upon Kups' performance, Reagan concluded that Kups' blood alcohol content would likely be at or above .100 grams per two hundred ten liters of his breath in violation of R.C. 4511.19(A)(3), placed Kups under arrest, apprised him of his rights, and transported him to the Chagrin Falls Police Station, where Officer Randall Jacobson conducted an Intoxilyzer test.
Jacobson testified that he explained to Kups the charges against him, read the Miranda rights, advised him of his right to independent tests, and allowed him to use the telephone to obtain the advice of an attorney. After using the telephone, Kups again submitted to the field sobriety tests and agreed to an Intoxilyzer test. Jacobson testified that he administered the Intoxilyzer test at 2:06 a.m., within two hours of Kups' initial arrest, and the result revealed a blood alcohol content of 0.133.
Officer Kimberly C. Libens of the Chagrin Falls Police Department testified about the calibration of the Intoxilyzer,[1] and those portions of the machine called a verifier and a simulator. Libens noted that, in accordance with standards determined by the Ohio Department of Health (ODH), the calibration must be within .005 grams of the target value of .100 grams per two hundred ten liters of breath. She also noted that ODH regulations required the Intoxilyzer to be tested every seven days.
On September 21, 1997, using a test solution of .100, the calibration test of the simulator and verifier gave a reading of .096. Although the test results fell within acceptable limits, the department concluded that this low reading and prior low readings indicated a possible need for repair. She testified that on September 22, her supervisor sent only the simulator of the Intoxilyzer to National Patent Analytical Systems, Inc. in Mansfield, Ohio.
The parties' joint exhibits reveal that National Patent received the simulator on September 27th and serviced it on October 2, 1997. National Patent replaced the simulator jar, noting that it had broken threads.
When the simulator was returned on October 7, 1997, Officer Libens conducted another calibration test. The parties' joint exhibits show a calibration test result of .097. Libens admitted, however, that the October 7th calibration test occurred outside the ODH's proscribed seven-day testing period. She testified, however, that, based upon the condition of the simulator and the calibration of September 21, 1997, the Intoxilyzer would have given a lower reading for subjects tested on September 27, 1997.
In an opinion and journal entry dated January 14, 1998, Judge Montgomery addressed Kups' challenge to the validity of the Intoxilyzer test but did not address the validity of Reagan's stop of the vehicle. In a later journal entry dated March 19, 1998, the judge clarified the earlier opinion and "overruled all aspects" of the motion to suppress.
After a jury-trial on March 20, 1998, Kups was convicted of operating a vehicle under the influence of alcohol, [R.C.4511.19(A)(1)], and of operating a vehicle while having a blood alcohol content at or in excess of 0.100 grams per two hundred and ten liters of breath [R.C. 4511.19(A)(3)]. He was sentenced to thirty days in jail, which was suspended on the condition that he participate in a 72-hour-weekend alcohol education program, fined $600 and his operator's license was suspended for six months with credit for Administration License Suspension (ALS) time served.
This Court will consider Kups' first and second assignments of error together:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF THE FIELD SOBRIETY AND PHYSICAL DEXTERITY TESTS, CHEMICAL TESTS, AND STATEMENTS MADE BY DEFENDANT AS OFFICER FAILED TO DEMONSTRATE A REASONABLE AND ARTICULABLE SUSPICION THAT CRIMINAL ACTIVITY WAS AFOOT; AND THAT OFFICER FAILED TO DEMONSTRATE PROBABLE CAUSE FOR A WARRANTLESS ARREST;
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF FIELD SOBRIETY AND PHYSICAL DEXTERITY TESTS, CHEMICAL TESTS, AND STATEMENTS MADE BY DEFENDANT BECAUSE SUCH EVIDENCE CONSTITUTES "FRUIT OF THE POISONOUS TREE" AS THE OFFICER HAD NO REASONABLE AND ARTICULABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP AND HAD NO PROBABLE CAUSE FOR ARREST OF APPELLANT UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION * * * AND SECTIONS 10 AND 16 OF ARTICLE 1 OF THE OHIO CONSTITUTION * * *.
Kups first argues that Officer Reagan's investigatory stop of his vehicle violated his Fourth Amendment rights because Reagan did not have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior had occurred or would occur. He points out that Reagan was attempting to investigate a minor traffic offense, but he could not identify the Kups car as the one he had observed earlier following too closely to another vehicle. Moreover, Reagan did not even question him about the alleged traffic violation, had no intention of citing him for any such violation and just asked whether everything was okay. He argues that a minor traffic infraction is not enough to stop a vehicle, especially when Reagan had no reasonable and articulable suspicion that his car was involved in the infraction. Kups also claims that Reagan's assertion that he had glassy or red eyes — something Reagan claims to have seen from quite a distance and from across the roadway facing the opposite direction — is not enough for an investigatory stop. The appearance of his eyes, Kups argues, could have been caused by contact lenses, something Reagan failed to note on his driver's license. As a result, all the evidence procured as the result of this unlawful detention "must be suppressed on appeal."
The Village argues that Officer Reagan had cause to investigate a traffic offense since he properly identified the Kups vehicle as the probable offender. It points out that Reagan found the vehicle parked on the tree lawn with its lights off, just shortly after he turned his police vehicle around, and it was reasonable to conclude that Kups was the probable offender. Also, the Village argues, since the vehicle already was stopped, Kups' contention that Reagan illegally stopped him is without merit. Because Reagan clearly had a reasonable and articulable suspicion to stop and detain Kups, the Village contends the judge properly denied the motion to suppress the evidence.
"The admission or exclusion of evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus; State v. Runnels
(1989), 56 Ohio App.3d 120, 125, motion to certify the record overruled (1989), 42 Ohio St.3d 711. A judge abuses his discretion when he acts in an unreasonable, arbitrary, or unconscionable manner. State v. Finnerty (1989), 45 Ohio St.3d 104,107; State v. Mays (1996), 108 Ohio App.3d 598, 617, discretionary appeal not allowed (1996), Ohio St.3d 1509. "A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby." Mays, 108 Ohio App.3d at 617; see, also, Crim.R. 52(A).
At a suppression hearing, the evaluation of evidence and the credibility of witnesses present questions of fact for the judge to decide. State v. Mills (1992), 62 Ohio St.3d 357, 366, certiorari denied (1992), 505 U.S. 1227; State v. Fanning (1982),1 Ohio St.3d 19, 20; State v. Tolbert (1996), 116 Ohio App.3d 86,90, discretionary appeal not allowed (1996), 77 Ohio St.3d 1472. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Tolbert, 116 Ohio App.3d at 90.
"The question whether a traffic stop violates theFourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer." Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 6. A police officer may conduct a traffic stop of an individual driving a motor vehicle when the officer has a reasonable suspicion, based upon specific and articulable facts, that a traffic violation has occurred.Westlake v. Kaplysh (1997), 118 Ohio App.3d 18, 20. The officer need not prove that the suspect committed an offense beyond a reasonable doubt or satisfy the lesser standard of probable cause to believe that the suspect violated the law. Id.
The Village suggests that Reagan's actions were appropriate and cites many cases in support. Those cases involve stops resulting from traffic offenses, voluntary or consensual encounters and those supported by reasonable specific and articulable facts. They are not persuasive.
Based upon our review of the testimony of Officer Reagan, this Court concludes it was reasonable for Reagan to stop on South Woodland and inquire whether anyone in the Kups vehicle needed assistance. Regan came upon that vehicle as it sat stopped on a tree lawn, its lights out and passenger door open, after Kups had driven the vehicle up over a six-inch curb. Therefore, the question is not whether Reagan had a reasonable and articulable suspicion that Kups had committed a traffic offense to justify a stop of the vehicle, because he clearly denied that was his purpose. The question becomes whether he had a reasonable and articulable suspicion that Kups was operating a motor vehicle under the influence of alcohol after observing Kups' eyes and then requesting Kups to remain at the scene. Was Reagan's intrusion warranted under a Fourth Amendment analysis?
To justify a warrantless, investigatory restraint of an individual, an officer must have a reasonable suspicion that the person is engaged in illegal activity: "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 22;State v. Loza (1994), 71 Ohio St.3d 61, 71; State v. Nealen
(1992), 84 Ohio App.3d 235, 239. A person may not be detained, not even momentarily, without reasonable, objective grounds to do so. State v. Robinette (after remand) (1997), 80 Ohio St.3d 234,240, citing Florida v. Royer (1983), 460 U.S. 491, 497-498. When determining whether the seizure was reasonable, the first question a judge must ask is whether the officer's action was justified at its inception. State v. Alexander (1997), 120 Ohio App.3d 164,169, discretionary appeal not allowed, 80 Ohio St.3d 1408. When making such an assessment, a judge must measure the facts against an objective standard: Would the facts available to the officer at the moment of the detention warrant a person of reasonable caution in the belief that such action would be appropriate? Id. at 169-170.
Applying the foregoing to the facts here, this Court concludes that Kups' detention was not appropriate. Reagan admitted that he could not identify the Kups vehicle as one of the two cars involved in the alleged traffic violation. This Court notes that Reagan's testimony also shows that he made no effort to investigate that alleged traffic violation. Rather, Reagan testified only that Kups had "red, glassy eyes." This Court concludes that red, glassy eyes alone would not warrant a reasonable person to believe that the person was involved in criminal activity. See, generally, Nealen, 84 Ohio App.3d at 239. As such, red, glassy eyes alone do not warrant an investigatory detention. Therefore, Reagan detained Kups in violation of hisFourth Amendment rights and the evidence derived from such unlawful detention should have been suppressed as it was inadmissible against him. State v. Carter (1994), 69 Ohio St.3d 57,67, 69.
The judge abused her discretion when she denied Kups' motion to suppress the results of the field sobriety tests, his statements to the officers, and the results of his Intoxilyzer test. Kups' first and second assignments of error are well taken.
Because our decision necessarily determines that the Intoxilyzer test results were not admissible against Kups, his third assignment of error challenging the accuracy of the test is rendered moot and we will not address it. App.R. 12(A)(1)(c).
Judgment reversed and the cause remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Shaker Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS SEPARATELY;ANN DYKE, PRESIDING JUDGE, CONCURS IN JUDGMENT ONLY.
 _________________________________ JUDGE ANNE L. KILBANE
[1] The parties' joint exhibit 4 shows that on June 12, 1996, the Ohio Department of Health issued to her a senior operator permit to perform breath tests using the BAC Verifier.