OPINION
Defendant-appellant Terry Wayne Yerkey appeals his December 14, 2000, conviction and sentence from the Stark County Court of Common Pleas on one count of illegal cultivation of marijuana, in violation of R.C.2925.04 and the denial of his Motion for New Trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
Defendant-appellant Terry Wayne Yerkey [hereinafter appellant] was wanted in Southern Ohio for attempted murder. Subsequently, the Federal Bureau of Investigation stopped appellant while he was in Kentucky. However, due to a clerical error, appellant was improperly released. A federal arrest warrant for Interstate Flight to Avoid Prosecution was issued for appellant.
Authorities in Stark County, Ohio, including the FBI, subsequently obtained information that connected appellant to a house in Pike Township, Stark County, Ohio, where appellant was allegedly residing.
Local authorities conducted a surveillance of the residence. On August 22, 2000, the authorities decided to execute the federal arrest warrant on appellant. Prior to execution of the warrant, the local authorities conducted two drive-bys of the residence. On the first drive-by, they observed a vehicle which was reportedly connected with appellant and on the second drive-by, they were able to positively identify appellant as the man standing in the front yard area. Subsequently, members of a local task force arrived at the residence.
When the task force first approached the property, they observed another individual on the front porch but did not see appellant. The individual on the porch, Alexis Companionis, was taken into custody for the officer's safety. The officers then entered the residence and began searching for appellant. As the officers searched for appellant, they observed marijuana plants growing throughout the house. Appellant was ultimately found in the basement, hiding in a cubbyhole, and was placed under arrest. The members of the task force continued to search the residence, because they had information that three individuals were in the residence, and they could only account for two individuals. In searching for the third individual, officers discovered a false wall. Once removed, the officers observed a large amount of growing marijuana. The marijuana plants, as well as growing instruments, were seized. In total, the marijuana recovered exceeded 20,000 grams.
Following appellant's arrest on the federal arrest warrant, an investigation was conducted to determine who was responsible for the marijuana growing at the residence. Testimony showed that James Peters, while accompanied by appellant, rented the house in June, 2000. While conflicting testimony was presented, there was evidence that Peters rented the house for appellant as a favor. Peters indicated that appellant needed a place for he and his children to stay. Testimony showed that Peters claimed that appellant provided Peters with the money for the rent.[1]
On August 30, 2000, the Stark County Grand Jury indicted appellant on one count of Illegal Cultivation of Marijuana, in violation of R.C.2925.04. At an arraignment conducted September 8, 2000, appellant entered a plea of not guilty.
On October 11, 2000, appellant filed a Motion to Dismiss and a Motion to Suppress Evidence. Only the Motion to Suppress Evidence, not the Motion to Dismiss, is at issue in this appeal. A hearing on the Motion to Suppress was conducted on November 6, 2000. By Judgment Entry filed November 16, 2000, the trial court denied appellant's Motion to Suppress.
Following the trial court's denial of the pretrial motions, the matter proceeded to jury trial. The trial was conducted December 6, 2000, and December 7, 2000. On December 7, 2000, the jury returned a verdict of guilty. Subsequently, by Judgment Entry filed December 14, 2000, the trial court found appellant guilty and imposed a mandatory prison sentence of eight years. In addition, the appellant's driver's license was suspended for a period of six months.[2]
On December 20, 2000, appellant filed a Motion for New Trial based upon newly discovered evidence. In support of the Motion, appellant submitted the affidavit of a "material witness with exculpatory evidence." Appellant's Motion for New Trial. On January 30, 2001, the trial court denied appellant's Motion for a New Trial.
It is from the conviction and sentence and the denial of his Motion for New Trial that appellant prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN DENYING APPELLANTS [SIC] MOTION FOR NEW TRIAL BASED ON CRIMINAL RULE 33 THEREBY DENYING APPELLANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THEREBY DENYING APPELLANT DUE PROCESS OF LAW.
 ASSIGNMENT OF ERROR III THE JURY VERDICT FINDING APPELLANT GUILTY OF ILLEGAL CULTIVATION OF MARIJUANA WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Any other facts relative to our discussion of the assignments of error shall be contained therein.
 I
In the first assignment of error, appellant contends that the trial court erred when it denied appellant's Motion for a New Trial, made pursuant to Crim. R. 33. We disagree.
In State v. Bell (1996), 112 Ohio App.3d 473, 479, the Third District Court of Appeals set forth the following standard for Crim. R. 33 motions:
 In order to grant a Crim.R. 33 motion for a new trial, it must be shown that the newly discovered evidence upon which the motion is based:
 `(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.' State v. Petro
(1947), 148 Ohio St. 505, syllabus.
The Supreme Court in Petro further noted that:
 "`The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion.[3]
And whether that discretion has been abused must be disclosed from the entire record.'" Petro, 148 Ohio St. at 507-508 (quoting State v. Lopa (1917), 96 Ohio St. 410, 411).
In support of his Motion for New Trial, appellant presented an affidavit from Alexis J. Companionis[4] who claimed that he had lived in the house in question. In the affidavit, Companionis stated that he met two men, neither of which was appellant, who were looking for a place to rent. Companionis was acquainted with appellant and knew appellant had a place that appellant was not using. When Companionis spoke with appellant regarding the property, appellant allegedly told Companionis to make arrangements through James Peter. Companionis' affidavit stated that Companionis lived in the house in exchange for caring for the marijuana plants that the two men were growing. Companionis claimed that, on the day of appellant's arrest, Companionis had run out of cigarettes and called appellant to come to the house and give him a ride into town. After appellant arrived, Companionis and appellant talked on the back porch for a short while and then appellant went in the house to use the bathroom. While appellant was inside, the police arrived.
In the affidavit, Companionis also provided an explanation as to why he had not come forward previously. Companionis stated that he had been in hiding because he did not understand what was going on and was afraid the two men might be after him. When he found out that appellant had been found guilty of growing the marijuana, he contacted appellant's family and agreed to come forward. Companionis stated that he came forward because he knew appellant was not involved in growing the marijuana.
The trial court found that the information was discovered since the trial and could not have been discovered earlier because the witness had voluntarily concealed himself. Further, the trial court found that the testimony was material to the issue. However, the trial court found that the proposed testimony was, for the most part cumulative to evidence received at trial.
The trial court found that the only new information presented was the claim that appellant came to the home solely to give Companionis a ride. However, the trial court reasoned that even if this were true, there was ample, additional evidence showing that appellant was connected to the house in other ways. The trial court concluded that the testimony that appellant was giving Companionis a ride that day did not disclose a strong possibility that it would change the results if a new trial were granted.
We find that the trial court did not abuse its discretion in denying the Motion for New Trial. At trial, James Peters, the man who signed the lease for the property, claimed that a man known as "Alexis," a "Cuban," and two unknown men gave Peters the money for the rent of the residence. That is the same testimony as presented in the affidavit. Companionis's affidavit stated that he, through two unknown men, paid the rent for the home. Therefore, the proposed testimony was cumulative to the testimony at trial.
The only new material evidence presented in the affidavit was the proposed testimony that appellant was at the house so that he could give Companionis a ride and that it was the "two men" who moved in the growing equipment and marijuana plants. However, it was not an abuse of discretion to find that such testimony was not likely to change the outcome of the trial. There was ample circumstantial evidence that indicated appellant was residing in the house and ample evidence he was paying the rent thereon.
Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant argues that the trial court erred when it denied his Motion to Suppress Evidence. Appellant contends that the law enforcement officers who entered the residence in question did not have a search warrant and that the officers illegally entered the home. Appellant argues that the house was surrounded and that there was ample time to obtain a search warrant or wait on appellant to exit the home. Further, appellant argues that even if the officers could enter the home, they only had authority to enter the home and make an arrest. Once the arrest was made, the officers should have secured the premises and not searched further until a search warrant was obtained. Therefore, appellant contends that all evidence seized as a result of the illegal entry should be suppressed. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 96; State v. Claytor (1993), 85 Ohio App.3d 623,627; and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
In the case sub judice, appellant challenges the trial court's ultimate decision. Appellant argues that the facts adduced at the hearing do not support the trial court's decision. Therefore, this court must independently determine whether the facts meet the applicable legal standard.
It is uncontested that the law enforcement authorities had a valid arrest warrant. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (Emphasis added.) Payton v. NewYork (1980), 445 U.S. 573, 661. But, appellant contends that a law enforcement officer first must have probable cause to believe the person named in the warrant actually resides there. Only then will reason to believe that that person is inside be enough to permit entrance. Although appellant concedes that the authorities had information from confidential sources that indicated appellant had lived there for approximately two months, appellant contends that this amounted to only a reasonable suspicion that appellant lived there.[5]
This court does not need to address whether an officer must have reasonable suspicion or probable cause to believe the person named in an arrest warrant lives at a residence before the officer may enter. Even if appellant did not reside at the residence as asserted by appellant, the officers could enter the home to arrest appellant. In State v. Tolbert, the Eighth District Court of appeals addressed whether evidence must be suppressed when officers entered a home without a search warrant to arrest a person named in an arrest warrant, even though the suspect named in the warrant was not the homeowner. [6] The court held that the right to privacy is personal to the homeowner and that the Fourth Amendment merely requires an arrest warrant plus "reason to believe" that the defendant was in another's house. State v. Tolbert (1996),116 Ohio App.3d 86 (citing United States v. Underwood (C.A.9, 1983),717 F.2d 482).
In the case sub judice, appellant concedes that the authorities did have a valid arrest warrant. The police also had reason to believe that appellant was in the residence. The authorities had a tip that appellant had been living in the home for approximately two months and that if a green Grand Prix was present, then appellant would be present. Observations of the home immediately before the execution of the warrant showed that the Grand Prix was present and a man identified as appellant was on the porch of the residence. This provided the officers with "reason to believe" that appellant was in the home. Therefore, the officers could enter the home to execute the arrest warrant.
The second issue under this assignment is whether the marijuana was obtained in violation of the Fourth Amendment. Appellant contends that no exigent circumstances existed to search this residence. Appellant argues that the residence was surrounded and that there was time to obtain a search warrant.
The trial court found that the marijuana was subject to seizure pursuant to the "plain view" doctrine. November 16, 2000 Judgment Entry (citing Coolidge v, New Hampshire (1971), 403 U.S. 443; Washington v.Chrisman (1990), 455 U.S. 1). It has long been the rule that where an initial intrusion by police officers is lawful, an incriminating object that comes into plain view during that intrusion may be seized without a warrant. State v. Williams (1978), 55 Ohio St.2d 82. In order to qualify under the plain view exception, it must be shown that 1) the initial intrusion which afforded the authorities the plain view was lawful; 2) the discovery of the evidence was inadvertent; and 3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. Id. at paragraph one of the syllabus.
Appellant acknowledges that if the officers were lawfully within the home, some of the marijuana was within plain view. Further, the marijuana plants were readily recognizable as contraband. Since we have found that the officers were within the home legally, any contraband items within plain view were subject to seizure.
However, appellant argues that some of the items seized were not within plain view. These items so challenged were seized after a false wall was discovered and removed.
Appellee argues that the wall was discovered in their search for the third suspect believed to be in the residence. One of the officers involved testified that the search for the third person believed to be in the house was continued for the officers' safety.
We find the continued search of the residence was justified in accordance with Maryland v. Buie, (1990), 494 U.S. 325. Buie held, in part, that law enforcement officers may make protective sweeps through an entire house when "articulable facts, which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334.[7]
Such a danger has been found to exist when there is reason to believe an accomplice may be on the premises. Cf. State v. Lyons (1992),83 Ohio App.3d 525; Rich v. United States (1975), 518 F.2d 980, cert. denied, (1976), 427 U.S. 907.
In this case, there was information that there were three persons and weapons in the home. Only two persons had been located. Appellant had been found hiding in the basement. The piece of furniture or crate was moved in the process of looking for the third person in the basement. The officer looked behind it. In so doing, the false wall was found. The officers were justified in conducting a protective sweep of the home to determine if or where the third person was in the home, for the officer's safety. The third person could have been hiding behind the piece of furniture or behind the false wall. Therefore, the officers had a right to look there and any recognizable contraband in plain view could be seized.
Appellant's second assignment of error is overruled.
 III
In the third assignment of error, appellant contends that the conviction was against the manifest weight of the evidence. We disagree.
In reviewing whether a conviction is against the manifest weight of the evidence, our standard of review is stated as follows: The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin
(1983), 20 Ohio App.3d 172. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of one count of Illegal Cultivation of Marijuana, in violation of R.C. 2925.04(A). Revised Code 2925.04(A) provides: "No person shall knowingly cultivate marijuana or knowingly manufacture or otherwise engage in any part of the production of acontrolled substance." (Emphasis added.)
Appellant concedes that appellee proved beyond a reasonable doubt that there was a marijuana growing operation located at the residence. However, appellant argues that appellee did not provide sufficient evidence that appellant was involved in the operation.
Evidence at trial showed that an investigation into the ownership and rental of the property revealed that appellant had been involved. The law enforcement officer conducting the investigation determined that the home was owned by Chris Beebe. Beebe testified that James Peters and appellant approached him about renting the property. While the lease was signed by Peters, the two men indicated that they both planned to move into the home.
Beebe testified, without objection, that subsequent to the renting the property, Peters told Beebe that he never lived in the home but Peters had told appellant that it would be fine as long as appellant paid the rent and the bills. Trial Tran. at 26. Further, the officer conducting the investigation into the ownership and renting of the home testified that, during a phone interview, Peters admitted that he rented the property for appellant. According to the officer, Peters claimed that the rent was paid by appellant. However, at trial, Peters denied these allegations and said that neither he nor appellant ever moved into the home and that the rent was paid by the "Cuban" and two other men whom Peters did not know.[8]
Pursuant to the testimony presented, we find that the conviction is not against the manifest weight of the evidence. There was testimony that appellant asked Peters to rent the property for him and appellant paid the rent for the property. Such activity constitutes participation in the operation. There was conflicting evidence on this issue. However, "[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Taylor (Sept. 19, 2001), Summit App. No. 20433, unreported (citing State v. Gilliam, (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported).
Further, there was testimony that appellant wanted to rent the house to have a place to be with his children. Children's belongings were found in one of the bedrooms of the house. In addition, upon termination of the lease between Beebe and Peters, appellant's mother was one of the people who came to the house to retrieve things from the house.
Reviewing the entire record, we cannot say that the jury clearly lost its way or there was a manifest miscarriage of justice.
Appellant's third assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
Hon. Julie Edwards, P.J. Hon. John Wise, J. Hon. John Boggins, J. concurs.
[1] At trial, Peters testified that he did not recall making such a statement to authorities and that appellant did not pay the rent on the property.
[2] A mandatory fine of $7,500.00 was imposed also. See R.C.2929.18(B)(1). The trial court ordered that the mandatory fine would be waived upon appellant's filing of an affidavit of indigency.
[3] An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court's ruling is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,158.
[4] A man by this name was referenced at trial. The record indicates that this man was also known as the "Cuban."
[5] Appellant cites this court to the testimony of FBI Agent and Coordinator of the Stark County Violent Crimes Fugitive Task Force, Drew Ptasienski. Agent Ptasienski testified that he need only have a reasonable suspicion that the suspect resides at a residence to enter a residence to effectuate an arrest warrant. Agent Ptasienski testified that he had reasonable suspicion.
[6] The trial court decided the issue upon application of Minnesota v.Olson (1984), 466 U.S. 740. However, Olson was a case concerning warrantless entry to effectuate an arrest. In this case, the officers had a warrant for the arrest of the suspect. Therefore, this court will consider appellant's assignment of error in accordance with the law applicable to situations in which officers enter a residence armed with an arrest warrant.
[7] "A `protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie,494 U.S. at 327.
[8] At first, Peters testified that he did not remember speaking to the officer but upon further questioning he claimed that he remembered talking to the officer but denied he ever implicated appellant as the person who paid the rent or used the residence.