OPINION
{¶ 1} Defendant-appellant, Sheila Breckenridge,[1]
appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict, finding her guilty of three counts of Medicaid fraud and one count of forgery.
 {¶ 2} Appellant is a licensed practical nurse who holds a provider number with the State of Ohio to furnish services for Medicaid recipients. During the period at issue in this case she provided such services both as an independent provider billing the Medicaid program directly and as an employee of PE Miller 
Associates ("PE Miller"), a home care agency, which paid appellant wages and then billed Medicaid.
 {¶ 3} The Franklin County Grand Jury indicted appellant on October 19, 2004, on a total of five counts, including two counts of Medicaid fraud as felonies of the fourth degree, one count of Medicaid fraud as a felony of the fifth degree, one count of forgery, and one count of theft. The counts essentially asserted that appellant had falsified her nursing timesheets both as an employee of PE Miller and in her billings directly to Medicaid. The overbillings applied to payment for nursing and home care services provided to three patients: Sheila Draughon, Stephen Sabo, and Debra Petty. The theft count of the indictments specifically related to unworked hours submitted to PE Miller as an employee.
 {¶ 4} After a five-day trial, the jury returned verdicts of guilty on the three counts of Medicaid fraud and the forgery count, and not guilty on the theft count. The court denied appellant's motions for acquittal and for a new trial, and subsequently sentenced appellant to three years of community control, restitution to the State of Ohio Medicaid program of $4,440 on one of the Medicaid fraud counts, $15,168 on another Medicaid fraud count, and $956.70 on the third Medicaid fraud count. The court imposed $1,000 in fines and court costs, and ordered further restitution to the State of $15,814.14 as recoupment of the State's investigative costs in the case.
 {¶ 5} Appellant has timely appealed and brings the following nine assignments of error:
[1]The trial court erred to the prejudice of the defendant by allowing expert opinion testimony, where the witness was not admitted as an expert.
[2] The trial court erred to the prejudice of the defendant by allowing expert opinion testimony, where the testimony did not satisfy Evid.R. 702(C), and where the documents that were the subject of expert testimony were provided to the jury in violation of Evid.R. 403(A).
[3] The trial court erred by convicting the defendant when the defendant did not receive effective assistance of counsel.
[4] The trial court erred by denying the defendant's motion to cross-examine the prosecuting witness Sheila Draughon regarding her theft-related convictions under Evid.R. 609.
[5] The trial court erred to the prejudice of the defendant by failing to grant the defendant's Crim.R. 29 motion as to the forgery charge.
[6] The trial court erred by failing to grant the defendant's motion for judgment of acquittal.
[7] The trial count erred by failing to grant the defendant's motion for new trial.
[8] The conviction was against the manifest weight of the evidence at trial.
[9] The trial court erred by ordering the defendant to pay restitution.
 {¶ 6} For convenience of analysis, we will address appellant's assignments of error out of numerical order, beginning nonetheless with the first two. These are principally concerned with the trial court's admission of the expert testimony of a handwriting expert to substantiate the forgery charge. Dr. Bouffard, a forensic document examiner, testified at trial about the authenticity of patient's signatures on various documents collectively identified as State's Exhibit PE-3. Dr. Bouffard concluded that all patient signatures contained in Exhibit PE-3 were forgeries produced by tracing the original signature of the patient from other documents. At the close of the State's case, the trial court reconsidered its admission of Dr. Bouffard's testimony and excluded it. The court limited the forgery charge to the single document constituting in State's Exhibit PE-4, a timesheet submitted under circumstances that otherwise supported the proposition that the patient's signature thereon was forged, and that thus did not require the jury to rely on expert handwriting comparisons.
 {¶ 7} Appellant argues that Dr. Bouffard was never qualified as an expert, and that the trial court erred in permitting him to testify over objection to give his expert opinion that the patients' signatures were forgeries produced by tracing. These aspects of appellant's first and second assignments of error are essentially moot because the trial court ultimately ruled that Dr. Bouffard's testimony should not have been admitted, and specifically instructed the jury to disregard that testimony. It is well-established that upon appeal, we will presume that the jury followed the trial court's curative instructions and properly disregarded the testimony at issue. State v. Davie
(1997), 80 Ohio St.3d 311, 317, 686 N.E.2d 245; State v. Loza
(1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082; State v. Woodard
(1993), 68 Ohio St.3d 70, 73, 623 N.E.2d 75. Simply pointing to an adverse verdict is not sufficient evidence to overcome this presumption.
 {¶ 8} In connection with the second assignment of error, appellant further argues that the trial court should not have admitted certain documents affected by Dr. Bouffard's testimony. Appellant points to Exhibits PE-3 and PE-5, collections of PE Miller timesheets, that were referenced in connection with Dr. Bouffard's testimony in support of the forgery charge. Again, the trial court specifically instructed that the jury should only consider, in connection with the forgery count, a single document, Exhibit PE-4, in which the alleged forgery was supported by circumstances independent of any expert analysis of the actual handwriting. Both Exhibits PE-3 and PE-5, which were admitted as probative of overbilling, even if not forged, remained relevant for the theft and Medicaid fraud charges and were properly admitted by the trial court because they were both relevant and sufficiently authenticated by other witnesses. The trial court did not commit prejudicial error by admitting the contested documents.
 {¶ 9} We accordingly find no error on the part of the trial court in dealing with the testimony of Dr. Bouffard and in admitting the documents at issue. Appellant's first and second assignments of error are overruled.
 {¶ 10} We now turn to appellant's fourth assignment of error, which asserts that the trial court erred when it denied appellant's motion to cross-examine prosecution witness Sheila Draughon, one of her patients. Appellant specifically asserts that she was improperly prevented from questioning Sheila Draughon about, and impeaching her with, prior misdemeanor and felony convictions over ten years old. Under Evid.R. 609(B), a witness may not be impeached with evidence of a conviction occurring more than ten years before unless "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Defense counsel in the present case was able to impeach Draughon with evidence of a more recent conviction (although Draughon may have lied on the stand in stating that this conviction had been expunged). The older convictions, for forgery and bad checks, were not factually tied to the present case and would have had little additional probative effect to overcome their prejudicial nature. Furthermore, defense counsel was allowed to extensively cross-examine Draughon, as well as admit numerous documents and elicit testimony from subsequent witnesses pertaining to Draughon's purported bad character. Under these circumstances, there was little additional probative value to be derived from admission of Draughon's prior convictions and the trial court did not err in preventing appellant's counsel from cross-examining on this issue. Appellant's fourth assignment of error is accordingly overruled.
 {¶ 11} Appellant's fifth assignment of error asserts that the trial court erred by denying appellant's Crim.R. 29 motion for acquittal on the forgery count. Pursuant to Crim.R. 29(A), the court will grant such a motion "if the evidence is insufficient to sustain a conviction on such offense or offenses."
 {¶ 12} This charge went to the jury on one document, Exhibit PE-4, and additional testimony. Exhibit PE-4 is a nursing visit record that purports to record a nursing visit taking place on August 20, 2003, from 6:00 to 6:30 p.m. The named patient is Sheila Draughon, and the document bears her purported signature as well as that of appellant. Janet Johnston, the Director of Nursing at PE Miller, testified that she fired appellant on August 20, 2003, at approximately 2:00 p.m. Johnston further testified that at that time appellant turned in her documentation for the week so that she would receive her final pay. Exhibit PE-4, Johnston testified, was one of the documents handed in by appellant at this time. The document was thus submitted by appellant some four hours prior to the stated time of care, yet purported to bear the patient's signature obtained during the nursing visit. With this testimony, the State presented sufficient evidence which, if believed, would establish that a document purportedly bearing Sheila Draughon's signature was turned in under circumstances that precluded her signing it. There was sufficient evidence for the forgery charge to go to the jury, and the trial court did not err in denying appellant's Crim.R. 29 motion on this charge. Appellant's fifth assignment of error is accordingly overruled.
 {¶ 13} Appellant's eighth assignment of error asserts that her convictions were against the manifest weight of the evidence presented at trial. Appellant's sixth assignment of error similarly asserts that the trial court erred in failing to grant appellant's motion for acquittal; in connection with this assignment of error, appellant argues that the evidence was insufficient to support conviction.
 {¶ 14} The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. As to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., citing Black's Law Dictionary (6 Ed. 1990) 1433. A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins, at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 2789,61 L. Ed.2d 560. A reversal based on insufficient evidence has the same effect as a not guilty verdict * * * because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652.
 {¶ 15} As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted that "[w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Thompkins, at 388, quoting Black's, supra, at 1594.
 {¶ 16} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id., at 387. An appellate court should reverse a conviction as against the manifest weight of the evidence in only the most "exceptional cases in which the evidence weighs heavily against conviction," State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR, 215, 485 N.E.2d 717, instances in which the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 17} Appellant was convicted of Medicaid fraud and forgery relating to three of her patients, Stephen Sabo, Debra Petty, and Sheila Draughon. With respect to the forgery conviction, without unnecessarily reiterating the evidence discussed above, we find that there was sufficient evidence which, if believed, would convince the average juror of the defendant's guilt, and that the greater amount of credible evidence sustained the State's burden of proof in the case. We accordingly find that appellant's conviction of forgery was neither supported by insufficient evidence nor against the manifest weight of the evidence.
 {¶ 18} Turning to the Medicaid fraud charges arising from appellant's care for Stephen Sabo, a severely impaired patient suffering from spina bifida, the State primarily relied on the testimony of Stephen's father, Joseph Sabo. Joseph testified at trial that he was nearly always present when appellant and other providers came to his house to provide nursing care for Stephen, and accurately recorded appellant's arrival and departure times for each visit. He maintained these records by means of notations in a personal calendar, documenting the name of care providers and times of arrival and departure. This calendar was admitted into evidence by the trial court without objection.
 {¶ 19} Special Agent Jill Lansky, of the Ohio Attorney General's Medicaid Fraud Control Unit, testified that she evaluated appellant's fabricated Medicaid billings for care provided to Stephen Sabo by comparing dates, times, and durations of care documented in Joseph Sabo's calendar with billing submitted by appellant, arriving at false billings related to Stephen's care of $956.70. Reconciliation of these records involved some instances in which Special Agent Lansky was able to credit appellant with some visits that were recorded on Joseph Sabo's calendar but for which appellant had not submitted billings, and the amount of fraud is accordingly reduced thereby. Although appellant argues that the failure to object to the calendar's admission constituted ineffective representation by trial counsel, a question that will be addressed in connection with the assignment of error raising that issue, appellant does not argue under the sixth and eighth assignments of error that admission of the calendar constituted plain error and that the calendar should be taken out of the evidentiary equation in this case. We find that if the calendar notations by Joseph Sabo were believed by the jury, which was fully entitled to do so, there was evidence before the trial court such that appellant's convictions for Medicaid fraud in connection with her care provided to Stephen Sabo was neither supported by insufficient evidence nor against the manifest weight of the evidence.
 {¶ 20} Medicaid fraud charges brought in connection with appellant's care of Debra Petty were supported by evidence in the form of a concealed camera covering the front entrance to Petty's home and recording appellant's comings and goings from the residence, which were then compared with her billings for the same period. The video equipment was set up by Josh Hudson, a forensic video and audio technician at the Ohio Organized Crime Investigations Commission. After setting up the equipment, Hudson trained Special Agent Lansky in its operation. The camera angle permitted continuous surveillance of the front door and a limited view of the side of the house, but did not allow direct visual coverage of a side door entrance. Witnesses at trial, including Debra Petty's son Samuel Petty, testified that there was difficulty with the side door of the home, that it was at least partially inoperable, and that Debra Petty and her guests utilized the front entrance, particularly after a wheelchair ramp was built to the front door. While appellant points out on appeal that the evidence was somewhat equivocal if on the question of whether the side door was capable of limited utilization, and whether appellant could have made unobserved visits through that door, Samuel Petty specifically testified that his mother preferred that visitors use the front door, stating that she had her "rules and regulations, don't use [her] side door." (Tr. 163.)
 {¶ 21} From this review of the evidence presented to the jury addressing the Medicaid fraud counts pertaining to the care of Debra Petty, we find that the State presented sufficient evidence in the form of the surveillance tapes and corroborating evidence of their reliability for a rational trier of fact to find the essential elements of the crime shown beyond a reasonable doubt.
 {¶ 22} The remaining Medicaid fraud counts arise from appellant's care provided to Sheila Draughon. To demonstrate the falsity of appellant's nursing visit records and billing for this care, the State relied primarily on the testimony of Sheila Draughon herself, who testified that during the period in question, appellant was supposed to provide two visits a day, but generally provided one or fewer and did not stay for the required time. In addition to the nursing visits, Draughon testified, appellant was to provide daily living services during additional visits to assist with domestic tasks. Draughon testified that appellant never provided such services while appellant worked for PE Miller, in direct contradiction with the nursing records turned in to PE Miller which purported to document such services by appellant.
 {¶ 23} Special Agent Lansky computed the loss to Medicaid for these overbilled services by extrapolating upon Draughon's testimony to determine the maximum number of visits actually rendered by appellant and comparing this with the claimed visits submitted by appellant for payment. In addition, Karen Mumpher, an accounts payable manager at PE Miller, testified that during appellant's employment with the company, several billings were refused because they represented double billings in which appellant claimed to be with two patients in different places at the same time. The billing statements submitted by the State as Exhibits PE-3, PE-5, and C-1, the State claimed, authenticated such conflicts.
 {¶ 24} While appellant points out that the jury heard much evidence of Draughon's lack of credibility, the credibility of this witness was for the jury to decide; if believed, this testimony and the documentary evidence was sufficient to support the offenses and adequate in weight to overcome conflicting evidence presented to the jury and support conviction on the charges related to appellant's care of Sheila Draughon.
 {¶ 25} In summary, we find that the jury verdict on the four offenses upon which appellant was convicted was neither against the manifest weight of the evidence nor supported by insufficient evidence to maintain a conviction. There is no indication that the jury lost its way in assessing the evidentiary conflicts nor that this is the "exceptional case in which the evidence weighs heavily against conviction" under Martin and Thomkins in which an appellate court should reverse a conviction as being against the manifest weight of the evidence. Appellant's sixth and eighth assignments of error are accordingly overruled.
 {¶ 26} Appellant's seventh assignment of error asserts that the trial court erred by overruling appellant's motion for a new trial. "A motion for a new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." Statev. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
 {¶ 27} Appellant's motion for a new trial relied upon three grounds: inadequate time for trial counsel to prepare for trial, accident or surprise based upon the late introduction of certain nurse's notes and other documents, and overall insufficiency of the evidence presented to the jury.
 {¶ 28} The sole aspect of this motion that is raised upon appeal is the impact of Dr. Bouffard's expert testimony regarding the possibility that some patient's signatures in State's Exhibits PE-3 and PE-5, were forged. Appellant also argues that trial counsel for the State misrepresented Dr. Bouffard's testimony regarding these documents in the State's memorandum contra the motion for a new trial.
 {¶ 29} As discussed above, we must presume, absent strong evidence to the contrary, that the jury followed the trial court's instructions to disregard Dr. Bouffard's testimony entirely. The implications of forgery with respect to Exhibits PE-3 and PE-5 were removed when the trial court limited the forgery count to the sole document found in Exhibit PE-4. With respect to the alleged mischaracterization of Dr. Bouffard's testimony in the State's memorandum opposing a new trial, we will not presume that the trial court was misinformed or swayed by these statements, since Dr. Bouffard's testimony occurred in open court and the trial court could no doubt form its own independent characterization thereof and assess its impact on the jury's consideration of the documents in question.
 {¶ 30} We accordingly find no grounds for concluding that the trial court abused its discretion in denying appellant's motion for a new trial, and appellant's seventh assignment of error is overruled.
 {¶ 31} Appellant's third assignment of error asserts that appellant was denied effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms.Strickland v. Washington (1984), 466 U.S. 668, 687, 688,104 S.Ct. 2052, 80 L.Ed.2d 674. The defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693.
 {¶ 32} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action `might be considered sound trial strategy.'" Id. at 689, citingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158,100 L.Ed. 83. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v. Hester (1976), 45 Ohio St.2d 71, 75,74 O.O.2d 156, 341 N.E.2d 304.
 {¶ 33} On appeal, appellant cites four errors occurring at trial to support her contention that trial counsel was ineffective. First, appellant argues that trial counsel, in her opening statement, unequivocally stated that appellant would testify in her own defense. Appellant subsequently elected not to do so. A review of the transcript, however, reveals that counsel's statement was substantially more ambiguous on this question: "[y]ou'll hear from Ms. Breckenridge * * * she thinks the State still owes her money." (Tr. 23.) Moreover, even if trial counsel had explicitly promised that appellant would testify and she had subsequently decided not to do so, this would not necessarily constitute ineffective assistance of trial counsel, and the impact and motive for such a statement would have to be assessed in the context of the entire defense case.State v. Ikharo, Franklin App. No. 02AP-632, 2003-Ohio-2319. In the present case, appellant's brief states on appeal that she had no prior convictions, removing the most obvious tactical barrier to her testimony in her own defense. In the absence of any indication that trial counsel was presumptively erroneous in contemplating the possibility that appellant would testify in her own defense, we are improperly called upon to speculate as to when appellant reached the decision not to testify and whether trial counsel should have been conclusively aware of that probability. The record accordingly does not demonstrate unprofessional error on the part of trial counsel in this respect.
 {¶ 34} Appellant further argues that trial counsel was ineffective for failing to move for a mistrial after Dr. Bouffard's testimony. It is difficult to discern any prejudice from failure to move for a mistrial at this time, since the trial court subsequently struck the offending testimony and gave a curative instruction to the jury. Under these circumstances, the likelihood of granting a motion for mistrial was unlikely, so that the failure to move for a mistrial would not constitute an unprofessional error.
 {¶ 35} Appellant next argues that trial counsel was ineffective for failure to object to admission of Joseph Sabo's calendar containing notations on nursing dates and times in his son's care program. Appellant argues that the calendar was erroneously admitted under Evid.R. 803(6), the business records exception to the hearsay rule, and that the document does not conform to the requirements of that rule. Because the document was admitted without objection, the trial court actually gave no basis for admitting the document at the time it was presented in conjunction with Joseph Sabo's testimony. We nonetheless find that Evid.R. 803(6) and (7) are applicable:
(6) Records of regularly conducted activity
A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(7) Absence of entry in record kept in accordance with theprovisions of paragraph (6)
Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.
 {¶ 36} While no case directly on point has been brought to our attention, we find that the trial court could well have concluded, had objection been raised to admission to Joseph Sabo's calendar, that the calendar constituted a "memorandum, report, record or data compilation" in connection with a "business." Evid.R. 803(6) defines "business" as a "business, institution, association, profession, occupation and calling ofevery kind, whether or not conducted for profit." (Emphasis added.) Evidentiary rulings are left to the sound discretion of the court, Krischbaum v. Dillon (1991), 58 Ohio St. 3d 58, and we cannot state that the trial court would have abused its discretion by finding that Joseph Sabo's ongoing attention for his bedridden and severely impaired son, for whom Sabo had the primary responsibility of coordinating and ensuring the care necessary to keep him alive, would not have constituted a "calling," and that Joseph's diligent notation of the comings and goings of medical caregivers were prepared by methods and circumstances indicating general trustworthiness. We therefore cannot find that had trial counsel elected to object to admission to Sabo's calendar there would be a strong probability that the outcome of the proceedings would have been different.
 {¶ 37} Finally, appellant argues that trial counsel was ineffective for failing to move for a mistrial following disclosure that additional surveillance videotapes of the Petty residence had not been furnished by the State to the defense prior to trial. Appellate counsel points out that trial counsel made every effort to view all available tapes prior to trial, but does not otherwise articulate which dates were covered by the undisclosed tapes, what activity was revealed therein, and how the defense was prejudicially affected by the nondisclosure. Because appellant is unable to develop on appeal what firm basis for a mistrial might have been considered by the trial court, the failure to move from a mistrial does not constitute ineffective assistance of trial counsel.
 {¶ 38} In summary, after reviewing the alleged unprofessional errors argued by appellant on appeal, we find that they do not rise to the level required of the Strickland standard, and appellant's third assignment of error is accordingly overruled.
 {¶ 39} Appellant's ninth and final assignment of error asserts that the trial court erred by awarding, as a component of restitution, investigative costs incurred by the State in the amount of $15,814.14, in addition to repayment of fraudulent amounts billed to Medicaid. Appellant also briefly argues that the amount awarded in restitution for fraudulent billing, $20,564.70, is not supported by sufficient evidence, an assertion that we reject since it is based upon the same questions of credibility and sufficiency covered in our examination of appellant's sixth and eighth assignments of error. With respect to the award of investigative costs, appellate counsel has subsequently conceded that R.C. 2913.40(F) specifically provides for an award of such costs against persons convicted of Medicaid fraud in addition to any other penalties. Appellant's ninth assignment of error is accordingly overruled.
 {¶ 40} In accordance with the foregoing, appellant's nine assignments of error are overruled, and the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Bryant, JJ., concur.
[1] Appellant's given name is spelled "Sheila" in all captioned pleadings, including her own, filed in the trial court and before this court. Multiple documents found in the record, some composed in her own handwriting, indicate that her named is correctly spelled "Shelia." If the spelling as used in proceedings to date is incorrect appellant has never sought to correct it, and we will accordingly continue to employ the spelling used in the indictment and final judgment in this matter.