JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Kevawn Barnes ("Barnes"), appeals the trial court's denial of his motion to suppress and motion for a new trial. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2007, Barnes was charged with drug trafficking, drug possession, and possession of criminal tools. The trafficking and possession charges were accompanied by one-year firearm specifications. Barnes filed a motion to suppress, which was denied after a full hearing. The following evidence was adduced at the motion hearing and jury trial.
 {¶ 3} The Cuyahoga County Sheriff's office received information that Raymond Scott ("Scott"), who had an outstanding warrant for aggravated robbery, was residing at 6923 Claasen Avenue. The deputies received the information from the Social Security Administration, which sent Scott's Social Security checks to that address. The deputies went to the address with Scott's photo and an arrest warrant. When they knocked on the side door, a man matching Scott's description came to the window. The deputies told the man to come to the door so they could talk to him. During the three to five minutes it took the man to come to the side door, the deputies heard movement inside the house. After the man, who was later identified as Barnes, opened the side door, the deputies requested permission to step inside, and Barnes allowed them in. They explained to Barnes that they had an arrest *Page 4 
warrant for Scott, but during the initial interview the deputies realized that Barnes was not Scott. Deputy James Showman testified that as he walked to the kitchen to speak with Barnes, he observed a bag of marijuana on a table in the living room. He also testified that he could smell marijuana.
 {¶ 4} The deputies informed Barnes that they needed to look for Scott in the house, to which Barnes replied, "You could have a look, man, if you like [for Raymond Scott]." Other deputies began to do a sweep of the house. When Deputy Michael Poslet entered one of the bedrooms, he observed a mattress propped up against the wall. Poslet approached the mattress with his gun drawn to see if anyone was hiding behind it. When he looked behind the mattress, he discovered approximately 100 pounds of marijuana packaged into three bundles.
 {¶ 5} Barnes was taken into custody, and the police obtained a search warrant for the house. The police recovered more marijuana, a digital scale, a handgun, and various papers including Barnes' Jamaican passport and birth certificate. Scott was not found in the house.
 {¶ 6} Barnes testified at the motion hearing that when he opened the side door, a deputy pulled him outside and handcuffed him while other deputies went into the house. He testified that he never gave the officers consent to search the house. Barnes did not testify at trial, however. The owner of the home testified that he had never seen Barnes before but had rented the house to Rohan Gibson.
 {¶ 7} The jury found Barnes guilty of all charges, but acquitted him of the *Page 5 
firearm specifications. Prior to sentencing, Barnes filed a motion for new trial and for acquittal, which the trial court denied. The court sentenced him to the mandatory minimum of eight years in prison.
 {¶ 8} Barnes appeals, raising three assignments of error for our review. In the first assignment of error, he argues that the trial court erred in denying his motion to suppress.
 {¶ 9} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583.
 {¶ 10} Barnes argues that the trial court erred in believing the deputies' testimony because they lacked credibility. Our job as reviewing court, however, is not to second-guess the trial court's determination of credibility. A reviewing court is bound to accept a trial court's findings of fact if supported by competent, credible evidence. See State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172, citing, State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. We, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. Id. See, also, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. For the following reasons, we find that the trial court's findings of fact were supported by competent credible evidence. *Page 6 
 {¶ 11} It is undisputed that the deputies went to the house with an arrest warrant for Scott, who had used that address for Social Security checks. The deputies were not able to ascertain Barnes' identity until after entering the house to talk with him. After the deputies discovered that Barnes was not the person they were looking for, they asked to look inside the house for Scott. Barnes consented to the deputies' request. If Barnes voluntarily consented to the search, then the discovery of the marijuana did not violate his constitutional rights.
 {¶ 12} The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227, 93 S. Ct. 2041,36 L. Ed. 2d 854. The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness; i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect. Florida v. Jimeno (1991), 500 U.S. 248, 251,111 S. Ct. 1801, 114 L. Ed. 2d 297.
 {¶ 13} "Important factors in determining whether a consent was voluntary are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." State v. Washington, Cuyahoga No. 86370, *Page 7 2006-Ohio-568, at ¶ 20.
 {¶ 14} Barnes testified that several deputies pulled him outside and handcuffed him while others proceeded to search the house. He denied giving consent. Two deputies, on the other hand, testified that he consented to the search of the house. Thus, whether consent was freely given hinges on the credibility of the witnesses, which was for the trial court to determine. We will not usurp the trial court's ability to determine witness credibility.
 {¶ 15} More importantly, even if Barnes had not consented, the deputies still would have been allowed to look inside the house for Scott because they had an active arrest warrant for Scott and a reasonable belief that he lived in the house. Police, without a search warrant, consent, or exigent circumstances, are allowed to enter the residence of a person with an active arrest warrant to execute said warrant. See Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639. In State v. Tolbert (1996), 116 Ohio App.3d 86,686 N.E.2d 1375, we determined that the police may enter a dwelling in order to arrest a person named in an arrest warrant who is not the homeowner if there is reason to believe that the person listed in the warrant is in the home. Id. (adopting the holding in United States v. Underwood (C.A.9 1983), 717 F.2d 482).[1] *Page 8 
 {¶ 16} In this case, when the deputies encountered Barnes at the side window of the house, they were unsure of his identity. Barnes took three to five minutes to open the side door and the deputies testified they heard noise inside the house during this delay. Thus, even if Barnes had not consented, the deputies would have been free to enter the house to look for Scott.
 {¶ 17} Therefore, we find that the trial court correctly denied Barnes' motion to suppress. The first assignment of error is overruled.
 {¶ 18} In the second assignment of error, Barnes argues that the trial court erred by failing to grant him a mistrial or a new trial based on statements Barnes allegedly made to the arresting officer when such statements were not disclosed in discovery.
 {¶ 19} The standard of review for evaluating the trial court's decision on a motion for a mistrial is an abuse of discretion.Cleveland v. Gonzalez, Cuyahoga App. No. 85070, 2005-Ohio-4413;State v. Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623;State v. Glover (1988), 35 Ohio St.3d 18, 517 N.E.2d 900. A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. State v. Reynolds (1988),49 Ohio App.3d 27, 33, 550 N.E.2d 490. The granting of a mistrial is only necessary when a fair trial is no longer possible. State v.Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citingIllinois v. *Page 9 Somerville (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected.State v. Goerndt, Cuyahoga App. No. 88892, 2007-Ohio-4067.
 {¶ 20} Likewise, the standard of review on a motion for a new trial pursuant to Crim. R. 33 is whether the trial court abused its discretion in denying the motion. Schiebel, at paragraph one of the syllabus;State v. Williams (1975), 43 Ohio St.2d 88, 330 N.E.2d 891.
 {¶ 21} During the direct examination of Deputy Vito Monteleone, the prosecutor asked him if he had conversed with Barnes. The deputy testified that he asked Barnes about the street value of the marijuana. Defense counsel asked to approach the bench, but the court denied his request. Monteleone testified that Barnes simply answered "personal use, man." Defense counsel again objected, requested a sidebar and asked for an immediate mistrial, arguing that the State failed to disclose Barnes' statement to police prior to trial. The State conceded that it had not disclosed the statement, claiming that it first became aware of Barnes' statement as the deputy testified. The State also argued that any error could be cured with an instruction to the jury to disregard the statement.
 {¶ 22} The trial court noted that the State had not disclosed the oral statement in discovery. The court sustained defense counsel's objection, denied his motion for a mistrial, and gave the following curative instruction to the jury: *Page 10 
 {¶ 23} "The statement of the deputy as to Mr. Barnes' statement to him is stricken from the record. The jury is to completely disregard anything that Mr. Barnes allegedly said to the deputy, with regards to the value or weight, or possession of these drugs. * * * It is not evidence."
 {¶ 24} A jury is presumed to follow instructions, including curative instructions, given to it by a trial judge. State v. Elko, Cuyahoga App. No. 83641, 2004-Ohio-5209; State v. Hardwick, Cuyahoga App. No. 79701, 2002-Ohio-496. Barnes argues that the trial court's instruction was not effective in curing the prejudice created by the deputy's statement; however, he fails to offer any support for this conclusion other than his conviction. Simply pointing to an adverse verdict is not sufficient evidence to overcome the presumption that the jury followed the trial court's instruction. State v. Breckenridge, Franklin App. No. 05AP-868,2006-Ohio-5038.
 {¶ 25} We also note that the statement "personal use, man" does not necessarily indicate that Barnes admitted he possessed the marijuana. There was overwhelming evidence offered at trial to support Barnes' conviction including his delay in answering the door, his movements inside the house and how the drugs were found, personal items in the house with Barnes' name on them, and his admission that he lived in the house and bought furniture for the house.
 {¶ 26} Thus, we find that Barnes has failed to demonstrate how he was prejudiced such that the trial court's curative instruction was inadequate. The second assignment of error is overruled. *Page 11 
 {¶ 27} In the third assignment of error, Barnes argues that the trial court erred by failing to grant him a new trial because the jury received improper exhibits during its deliberations.
 {¶ 28} In State v. Allen (Apr. 7, 1983), Cuyahoga App. Nos. 43687 and 43688, we stated that "if there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory." Id. at 9-10, quoting United States v. Marx
(1973), 485 F. 2d 1179. The burden is on the defendant, however, to show that he has been prejudiced or harmed by the admittance of the evidence to the jury. Id.
 {¶ 29} In this case, the jury received three unadmitted exhibits: a Jamaican money order in Barnes' name and two newspaper collection notices directed to other persons at the Claasen address. Defense counsel informed the court that he had never seen the exhibits and they were not produced by the State in discovery. The prosecutor told the court that he personally went over the exhibits with the court's bailiff and had not included the unadmitted exhibits in the package that went into the jury room.
 {¶ 30} First, we note that the trial court directed defense counsel and the prosecutor at the end of trial to check the exhibits, "so that only admitted exhibits will be sent back to the deliberation room." It is unclear how the exhibits made their way into the jury room and it is also unclear whether the jury saw or considered the unadmitted exhibits. *Page 12 
 {¶ 31} At sentencing, defense counsel made no argument that the unadmitted exhibits prejudiced his client, but rather argued that the unadmitted exhibits should have been given to him during discovery because they may have been exculpatory. On appeal, Barnes now argues that the trial court should have held a hearing to further establish facts for a proper ruling on his motion. We disagree.
 {¶ 32} The decision of whether a hearing is warranted on a motion for a new trial lies within the discretion of the trial court. State v.Clark (Nov. 22, 2000), Montgomery App. No. 17839, citing State v.Pritchard (Nov. 26, 1999), Hamilton App. No. C-990148. We do not find that the trial court abused its discretion in deciding not to hold a hearing and in denying Barnes' motion. Barnes never even argued, let alone demonstrated, that he was prejudiced by the unadmitted exhibits.
 {¶ 33} Therefore, the third assignment of error is overruled.
 {¶ 34} Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
JAMES J. SWEENEY, A.J., and KENNETH A. ROCCO, J., CONCUR
[1] Even if Barnes had refused entry to the deputies, they could have broken into the home to attempt to arrest Scott. Under Ohio law, an officer executing an arrest warrant may break down an outer or inner door or window of an arrestee's residence if the officer announces his intent to execute the warrant and he is refused admittance. R.C. 2935.12. *Page 1