[Cite as *State v. Beckwith*, 2016-Ohio-382.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102544**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RONALD BECKWITH**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585247-A

**BEFORE:** Laster Mays, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 4, 2016

-i-

**ATTORNEY FOR APPELLANT**

James J. Hofelich
614 W. Superior Avenue, Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Blaise D. Thomas
John Patrick Colan
Eric L. Foster
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Ronald Beckwith ("Beckwith") was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), an unclassified felony with a one-year firearm specification under R.C. 2941.141(A) and a three-year firearm specification under R.C. 2941.145(A); murder in violation of R.C. 2903.02(B), an unclassified felony with a one-year firearm specification under R.C. 2941.141(A) and a three-year firearm specification under R.C. 2941.145(A); felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony with a one-year firearm specification under R.C. 2941.141(A), a three-year firearm specification under R.C. 2941.145(A), notice of prior conviction under R.C. 2929.13(F)(6), and a repeat violent offender specification under R.C. 2941.149(A); felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony with a one-year firearm specification under R.C. 2941.141(A), a three-year firearm specification under R.C. 2941.145(A), a notice of prior conviction under R.C. 2929.13(F)(6), and a repeat violent offender specification under R.C. 2941.149(A); and having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony. The jury returned a verdict of not guilty on the aggravated murder charge and found Beckwith guilty of the lesser included offense of murder. He was found guilty on all other charges. For the purpose of sentencing, the court merged the two murder counts and the two felonious assault counts, and merged the firearm specifications. Beckwith was sentenced to 15 years to life on the merged counts, three years on the firearm specifications to run consecutively, and two years on the having weapons while under disability count, also to be served consecutively. Beckwith filed a timely appeal.

**{¶2}** Beckwith assigns five errors for our review.

I.       The trial court erred in allowing the state to cross-examine its own witness absent a showing of surprise and affirmative damage.

II.   The trial court erred in allowing the state to elicit multiple hearsay statements and the cumulative effect of these   statements denied appellant's right to a fair trial.

III.   A witness' non-admitted statement that was included with the admitted exhibits and given to the jury created a presumption of prejudice that warrants a new trial.

IV.   Appellant was denied his right to effective assistance of counsel.

V.    Appellant's convictions were against the manifest weight of the evidence.

After a thorough review of the record, we overrule all five assignments of error and affirm Beckwith's convictions.

**I.       Facts and Procedural Posture**

{¶3} On September 21, 2012, the victim left his apartment and a short time later was shot and killed.   Beckwith was later arrested and indicted on May 21, 2014, for the victim's murder. During pretrials, Beckwith filed several pro se motions.   Beckwith also notified the trial court that his appointed counsel was not allowed to engage in any plea negotiation with the state.   On December 8, 2014, Beckwith was referred to the Court Psychiatric Clinic for an evaluation for sanity at the time of the act and competency to stand trial.   The clinic opined that Beckwith was both sane and competent, and the parties stipulated to this finding on January 7, 2015.

{¶4} The case proceeded to a jury trial where several witnesses testified that they observed Beckwith and the victim engaging in an argument when Beckwith pulled out a gun and shot the victim.   Malinda Banks ("Banks"), who was the victim's girlfriend, stated that she left the apartment to go to the store.   When Banks returned, she found the victim on the ground.   It was during this time that the victim told Banks that "Ron shot him."   Tr. 537.

**{¶5}** Another witness, Darrell Simpson ("Simpson"), testified that he saw Beckwith and the victim arguing. Simpson walked away and then heard a gunshot. At the moment of the shot, Beckwith was at the victim's side. Simpson then saw Beckwith running up the street and the victim on the ground. Simpson testified that he did not come forward because he was threatened not to come downtown for any reason or "you know what's up." Tr. 627. Simpson at that point did not want to get involved.

**{¶6}** Antoine Talley ("Talley") was in a holding cell with Beckwith. Talley testified that while in a holding cell with Beckwith, Beckwith discussed his case. Beckwith told Talley that "he got into an altercation with the dude, he pulled up to the store and seen him there, he got out and that's when they got in an altercation and he shot him up." Tr. 660-661.

**{¶7}** Another witness, Samson Hughley ("Hughley"), testified that he went to the corner store with his son. While his son was in the store, he was on the corner when he saw two males running across the street. One of them had a gun in his hand. Hughley thought they were going to rob him. When his son came out of the store, he told his son to ride his bike home. Hughley began walking home behind his son. While he was walking, he heard a gunshot and observed two men running across the street. He then saw the victim on the ground. Hughley testified that Beckwith was the man he saw carrying the gun and the other man was Beckwith's cousin. Before trial, Hughley gave a statement to the police. This statement was memorialized in writing. After closing arguments and the jury charge, the jury was given numerous exhibits. The statement that Hughley gave to the police was attached to an autopsy report.

**{¶8}** Justine McGeever ("McGeever") testified that he did not remember making a statement to the police concerning the shooting. The prosecutor had a signed statement from October 2012, but again McGeever stated he did not remember it. The court called a sidebar,

and after discussions, the court instructed the jury regarding a mechanism in the law that allows the prosecutor to examine their own witness as if on cross-examination. The court then permitted the state to cross-examine McGeever, and his statement was read into evidence. Defense counsel had no objection to the cross-examination of McGeever by the state and did not cross-examine McGeever on behalf of the defense.

{¶9} At the conclusion of the trial, Beckwith was found guilty and sentenced to 20 years to life in prison.

## II. Cross-Examination of the State's Witness

{¶10} In his first assignment of error, Beckwith argues that the trial court erred in allowing the state to cross-examine its own witness when it was neither surprised nor could demonstrate affirmative damage. In the context of determining whether a party can impeach its own witness, "the issue of surprise is a factual issue entrusted to the sound discretion of the trial court." *State v. Collins*, 8th Dist. Cuyahoga No. 53514, 1988 Ohio App. LEXIS 1075 (Mar. 24, 1988). Furthermore,

> "[T]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
>
> In *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), at paragraph four of the syllabus, the Ohio Supreme Court held that:
>
> "* * * a trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court."
>
> In *State v. Apanovitch*, 33 Ohio St.3d 19, 22, 514 N.E.2d 394 (1987), the Ohio Supreme Court stated further that:
>
> "Evid.R. 614 also provides that a court may call witnesses on its own motion and allow each party to then cross-examine those witnesses."

*State v. Rhym*, 8th Dist. Cuyahoga No. 67750, 1995 Ohio App. LEXIS 3124 (July 27, 1995).

**{¶11}** The state need not demonstrate surprise in order to cross-examine such a witness. *State v. Dacons*, 5 Ohio App.3d 112, 449 N.E.2d 507 (10th Dist.1982). We give substantial deference to the trial court unless we determine that the court's ruling was an abuse of discretion. *State v. Tankers*, 8th Dist. Cuyahoga Nos. 72398 and 72399, 1998 Ohio App. LEXIS 1724 (Apr. 23, 1998). "The term abuse of discretion connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "An abuse of discretion * * * implies a decision which is without a reasonable basis or one which is clearly wrong." *Angelkovski v. Buckeye Potato Chips Co.*, 11 Ohio App.3d 159, 463 N.E.2d 1280 (10th Dist.1983). "Abuse of discretion will not be found when the trial court makes the correct decision, however, gives the wrong reason for the decision." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).

> **{¶12}** Beckwith relies on Ohio Evid.R. 607 that states,
>
> [T]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.

However, his reliance is incorrect; the rule states that the "exception does not apply to statements admitted pursuant to" several evidentiary statutes. The state relied on Evid.R. 801(D)(1)(a) which states,

> [T]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with declarant's testimony, and was give under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

**{¶13}** The state's witness, McGeever, testified that he did not remember making statements to the police concerning the shooting, even though the state had a written and signed statement from him. Specifically the trial transcript, at page 681, states:

PROSECUTOR: So again putting the question to you, did you previously present yourself at the Cleveland Police Homicide Unit with information?

McGeever: I do not remember.

PROSECUTOR: On October 13th, 2012, do you remember being downtown?

McGeever: No.

The trial court then asked to see the lawyers at a sidebar, and had an off-the- record conversation. The court informed the jurors of Evid.R. 801(D)(1)(a) that would allow the prosecutor to cross-examine its own witness. When McGeever stated that he did not remember speaking to the police or going downtown to the police station to make his statements against the appellant, his testimony was inconsistent with his past behavior. Therefore, the state was permitted to cross-examine him in accordance with the rule. Appellant's first assignment of error is overruled.

## III. Hearsay Statements

**{¶14}** In his second assignment of error, Beckwith contends that the trial court erred in allowing the state to elicit multiple hearsay statements and the cumulative effect of these statements denied appellant's right to a fair trial. A trial court has broad discretion with respect to the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638, ¶ 92. We therefore will not disturb a trial court's decision regarding the admissibility of hearsay

evidence absent an abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), citing *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10.

> To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.

*State v. Ortiz*, 8th Dist. Cuyahoga No. 102511, 2015-Ohio-4906, ¶ 5.

{¶15}   "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   Evid.R. 801(C).   During the trial, one witness testified that he was threatened by Beckwith's cousin and told not to speak about what he saw.   The other witness did not specifically say who threatened him, but that he was threatened on the street regarding speaking with the cops.   Despite what Beckwith argues, both of these witnesses were threatened directly.   They did not hear about the threats from someone else.   This does not constitute hearsay.   Appellant's second assignment of error is overruled.

## IV.   Admitted Evidence

{¶16} In his third assignment of error, Beckwith argues that a witness's statement, that was not admitted into evidence, was included with the admitted exhibits and given to the jury and created a presumption of prejudice that warrants a new trial.   "Generally, the law in this area is settled; if there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory."   *State v. Allen*, 8th Dist. Cuyahoga Nos. 43687 and 43688, 1983 Ohio App. LEXIS 13695 (Apr. 7, 1983).   However "the burden is on the defendant to show that he has been prejudiced or harmed by the admittance of

the evidence to the jury." *State v. Barnes*, 8th Dist. Cuyahoga No. 90690, 2008-Ohio-5602, ¶ 28.

{¶17} One of the witnesses, Hughley, gave a statement to the police prior to the trial. The transcript of that statement was inadvertently given to the jury. It is not clear how the statement was given to the jury, and the jury did not tell the court about the statement. Beckwith's appellate attorney discovered the mistake. Beckwith argues that since the jury had access to this statement, it prevented him from receiving a fair trial. He contends that the unadmitted statement contains information, such as motive, that was not testified to at trial. If that assertion was accurate, Beckwith would be correct that the unadmitted evidence is prejudicial. However, the witness's statement to the police is identical to his testimony at trial, including the possible motive. Beckwith has not shown that he was prejudiced or harmed by the admittance of the evidence to the jury. Appellant's third assignment of error is overruled.

## V. Ineffective Assistance of Counsel

{¶18} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland* at 688. Judicial scrutiny of defense counsel's performance must be highly deferential. *Id*. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

{¶19} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgement. *State v. Bell*, 8th Dist. Cuyahoga No. 102141, 2015-Ohio-4178, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

{¶20} In his fourth assignment of error, Beckwith argues that he was denied his right to effective assistance of counsel because his trial attorney did not raise the hearsay issue at trial. To prevail on this claim, Beckwith must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced him. Failure to establish either element is fatal to the claim. Therefore, if one element is dispositive, a court need not analyze both. *State v. Sutton,* 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 18.

{¶21} Beckwith's trial attorney may not have raised the hearsay issue at trial because there was no issue. The witness statements were not hearsay, as discussed in assignment of error No. II. Since it was not hearsay, the trial attorney did not have a responsibility to raise it. In addition, Beckwith argues that his trial attorney should have objected to the witness's unadmitted statement being given to the jury. If his counsel knew about the evidence being given to jury, this would be true. However, no one had any information about how the statement was submitted. We find that trial counsel's assistance was not ineffective, and appellant's fourth assignment of error is overruled.

## VI. Manifest Weight of the Evidence

{¶22} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.

> In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717 (1st Dist.1983).

{¶23} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Id.* It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue that is to be established before them. *Id.* Weight is not a question of mathematics, but depends on its effect in inducing belief. *Thompkins* at 387.

{¶24} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶25}** In his fifth and final assignment of error, Beckwith argues that his convictions were against the manifest weight of the evidence because every witness was an admitted drug user or drug dealer at the time of the incident. However, all of the witness testimony are consistent with one another with no contradictions. One witness testified that they saw Beckwith running away from the crime scene with a gun after hearing a gunshot. Another witness testified that the victim told her that Beckwith shot him before he died. The trier of fact listened to voice inflections and observed each witness's demeanor and gestures. They were able to determine the credibility of the witnesses and analyze the evidence. There was not a miscarriage of justice. After weighing all the evidence and the testimony of all the witness, we hold that Beckwith's conviction is not against the manifest weight of the evidence and overrule his fifth assignment of error.

**{¶26}** The judgment of the trial court is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds that there reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

TIM McCORMACK, J., CONCURS;
EILEEN A. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION

EILEEN A. GALLAGHER, P.J., DISSENTING:

**{¶27}** I respectfully dissent.   I would sustain Beckwith's third assignment of error and find reversible error.   As the majority acknowledges, when an issue is raised regarding the jury's potential viewing of unadmitted exhibits during jury deliberations, the threshold for reversal is low: "'[I]f there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory.'"   *State v. Allen*, 8th Dist. Cuyahoga Nos. 43687 and 43688, 1983 Ohio App. LEXIS 13695, *10 (Apr. 7, 1983), quoting *United States v. Marx*, 485 F.2d 1179, *cert. denied*, 413 U.S. 933 (1973); *see also State v. Barnes,* 8th Dist. Cuyahoga No. 90690, 2008-Ohio-5602, ¶ 28 ("The burden is on the defendant * * * to show that he has been prejudiced or harmed by the admittance of the evidence to the jury.").

**{¶28}** In this case, it is unknown whether any of the jurors reviewed Hughley's statement prior to rendering the verdict in this case.   The jurors did not bring the issue to the attention of the trial court,[1] and the error was apparently first discovered by Beckwith's appellate counsel when reviewing the trial exhibits in preparation for this appeal.   Accordingly, unlike in other cases that have addressed this issue, there was no opportunity for the trial court to question the jurors and determine whether they reviewed the statement during their deliberations.   *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 37 (in determining whether reversible error occurs when inadmissible evidence is found in the jury room, the

---

[1]Assuming that the jurors viewed the statement during their deliberations, the fact that they did not bring it to the attention of the trial court is hardly surprising given that the jurors were specifically instructed that the admitted exhibits were among the evidence they could consider in rendering a verdict in the case and that only exhibits that had been admitted would be sent back with them during deliberations.

"threshold question * * * is whether the jury saw the evidence"; "regardless of whether it is error to send inadmissible evidence into a jury room, the error is harmless if the jury does not view the evidence"); *see also Allen* at *10-11 (where several pieces of evidence were accidentally submitted to the jury, but the trial court determined that the jury did not view the evidence, there was no reversible error).   Under the circumstances here, I believe it is appropriate to presume that the jurors reviewed the statement as part of their deliberations.

{¶29} The majority indicates that if Hughley's statement contained information that was not testified to at trial, "Beckwith would be correct that the unadmitted evidence is prejudicial." The majority, however, concludes that Hughley's trial testimony was "identical" to the statement and that, therefore, Beckwith could not have been prejudiced by the submission of the unadmitted statement to the jury.   It is here where I disagree.   I do not agree that Hughley's statement and trial testimony were identical.   Nor do I agree that Beckwith could not have been prejudiced by the submission of Hughley's unadmitted statement to the jury.   First, Hughley's statement contains more detailed information regarding the "problems" that allegedly existed between Beckwith and "Rob" (or rather, the people in "Rob's" house) than Hughley's trial testimony, provided a more thorough explanation of Beckwith's possible motive for killing "Rob," namely, that the younger boys that were selling drugs from "Rob's" house in competition with Beckwith had "better drugs" than Beckwith such that "[a]ll the money on the street was going to Rob's house."   In addition, whereas Hughley's trial testimony describes the "stuff going on" between Beckwith and "Rob" as a "rumor," the statement presents the existence of the "problems" between them as fact.   Thus, the statement was not repetitive or cumulative of evidence that had already been properly admitted at trial.

{¶30} Furthermore, there were a number of credibility issues with Hughley's testimony in

that Hughley waited two years to come forward with his version of the events, received a "plea deal" in exchange for his agreement to testify and that he anticipated that his "cooperation" in testifying against Beckwith would assist him in securing judicial release on drug charges for which he was then serving an 18-month prison sentence. To the extent that Hughley's trial testimony was consistent with his statement, the unadmitted statement may have bolstered his testimony. Indeed, the state — apparently recognizing this possibility — placed special emphasis on Hughley's statement during its opening statement, encouraging the jurors to review the statement "in the context of all the other known evidence" and suggesting that the statement would further support the state's version of the events:

> [Y]ou're going to hear from two other witnesses that also describe seeing portions of this event. * * *

> One of them is a convicted drug dealer who has, in the past, reached an agreement with the State of Ohio to testify pursuant to a statement he gave to the Cleveland Police Department. His name is Samson Hughley * * * .

> I know the defense will be pointing this out to you, he didn't come forward until two years after the event when he was pinched in his own drug case, and at that time he decided he had a card to play, he had knowledge about the death of Farraud.

> But he gave a statement which we believe, once you review it in the context of all the other known evidence, will have internal consistency with the description of other witnesses.

{¶31} Based on my review of the record, I believe that Beckwith has established the possibility that he was prejudiced by the submission of Hughley's statement to the jury for use during its deliberations. This is not a case in which the other evidence of Beckwith's guilt was so overwhelming that I believe we can say with confidence that submission of the unadmitted exhibit to the jury constituted harmless error. *See, e.g., State v. Adams*, 8th Dist. Cuyahoga No. 89919, 2008-Ohio-3136, ¶ 12 ("When unadmitted evidence is mistakenly submitted to a jury, if

that evidence is repetitive or cumulative of other evidence introduced at trial, the error is harmless. * * * If, on the other hand, the unadmitted exhibits do not duplicate other evidence admitted at trial and they prejudice the defendant and the evidence of defendant's guilt is not overwhelming, then the conviction cannot stand."); *see also State v. Westwood*, 4th Dist. Athens No. 01CA50, 2002-Ohio-2445, ¶ 27, 37. Accordingly, I would sustain Beckwith's third assignment of error and find reversible error.